**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
CLERK'S OFFICE

MAY 18  P 3:51

U.S. DISTRICT COURT
DISTRICT OF MASS

| | |
|---|---|
| **CITY OF CHICOPEE acting through CHICOPEE PUBLIC SCHOOLS,** | ) ) ) |
| **Plaintiff** | ) |
| | ) **CIVIL ACTION NO. 04-30087-KPN** |
| **v.** | ) ) |
| **DAVID T. As parent and next friend of KAITLYN T. and MASSACHUSETTS DEPARTMENT OF EDUCATION** | ) ) ) ) |
| **Defendants** | ) ) |

## OPPOSITION TO THE CHICOPEE PUBLIC SCHOOL'S MOTION TO STAY

The Chicopee Public Schools seek a stay pending its appeal of the Bureau of Special Education Appeals (hereinafter "BSEA") decision dated April 7, 2004, which held for the parents granting the unilateral placement of Kaitlyn T. at the White Oak School located in Westfield Massachusetts.

## STANDARD OF REVIEW

The Supreme Court has stated that the factors regulating the issuance of a stay pending appeal "are generally the same" for a district court and for a court of appeals. *Hilton v. Braunskill, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987).* These factors are:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Id.*

**ARGUMENT**

I.    THE CHICOPEE PUBLIC SCHOOLS HAVE NOT MADE A
      STRONG SHOWING THAT IT IS LIKELY TO SUCCEED ON
      THE MERITS

The first prong of this test has not been interpreted or applied literally, even by the First

Circuit Courts of Appeals. Rather, it has been held that:

> "On motions for stay pending appeal the movant need not always
> show a "probability" of success on the merits; instead, the movant
> need only present a substantial case on the merits when a *serious
> legal question* is involved and show that the balance of the equities
> weighs heavily in favor of granting the stay." *(Emphasis added)*
> *Ruiz v.   Estelle, 650 F.2d 555, 565 (5th Cir. 1981) (citing
> Providence Journal Co. v. Federal Bureau of Investigation, 595
> F.2d 889, 890 (1st Cir. 1979)* [1]

When the request for a stay is made to a district court, common sense dictates that the

moving party need not persuade the court that it will be reversed on appeal. Rather, with regard

to the first prong of the *Hilton* test, the movant must only establish that the appeal raises serious

and difficult questions of law in an area where the law is somewhat unclear. *See Exxon Corp.*

*v.Esso Worker's Union, Inc., 963 F. Supp. 58, 60 (D. Mass. 1997); Gay Lesbian Bisexual*

*Alliance v. Sessions, 917 F. Supp. 1558, 1561 (M.D. Ala. 1996); Mamula v. Satralloy, Inc., 578*

*F. Supp. 563, 580 (S.D. Ohio 1983); Evans v. Buchanan, 435 F. Supp. 832, 844 (D. Del. 1977).*

While admittedly the standard of review in cases on appeal from the BSEA is not limited

to legal questions alone, the relevant statutory provision governing the granting of a stay is

limited to whether there is a serious legal question on appeal.  In the present case there is no legal

---

[1] "Where . . . the denial of a stay will utterly destroy the status, irreparably harming appellants, but the granting of a stay will cause relatively slight harm to appellee, appellants need not show an absolute probability of success in order to be entitled to a stay."). *See also Canterbury Liquors & Pantry v. Sullivan, 999 F. Supp. 144, 149 (D. Mass. 1998) ; 11 Wright, Miller & Kane, Federal Practice and Procedure § 2904, at 503 & n. 11 (2d ed. 1995 & Supp. 1997).*

issue on appeal. Even if the first prong were to include issues on appeal pertaining to factual discrepancies, which it does not, the Chicopee Public Schools still would not be able to show a strong likelihood of success. It is well settled that the review process of cases on appeals from the BSEA is a limited review. Legislatively and statutory authority does not provide the reviewing court with the broad latitude to alter the findings of the hearing officer. The First Circuit Court of Appeals states conclusively on this issue:

> "While the IDEA envisions judicial review, the statute "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Lenn v. Portland School Committee, 998 F.2d 1083, 1084 (1st Cir. 07/15/1993) citing Rowley, 458 U.S. at 206. See Roland M., 910 F.2d at 989; Colin K. v. Schmidt, 715 F.2d 1, 5 (1st Cir. 1983).*

The First Circuit Court of Appeals also has held:

> "In the course of this independent review, the administrative proceedings must be accorded "due weight." Although the exact quantum of weight is subject to the district Judge's exercise of informed discretion, the Judge is not at liberty either to turn a blind eye to administrative findings or to discard them without sound reason." *Lenn v. Portland School Committee, 998 F.2d 1083, 1084 (1st Cir. 07/15/1993) See Hampton, 976 F.2d at 52; G.D. v. Westmoreland Sch. Dist., 930 F.2d 942, 946 (1st Cir. 1991).*

The First Circuit Court of Appeals has also held that:

> "'The court, in recognition of the expertise of the administrative agency, must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue.' In the end, the judicial function at the trial-court level is 'one of involved oversight,' *Roland M., 910 F.2d at 989;* and in the course of that oversight, the persuasiveness of a particular administrative finding, or the lack thereof, is likely to tell the tale. *Lenn v. Portland School Committee, 998 F.2d 1083, 1085 (1st Cir. 07/15/1993) citing Burlington, 736 F.2d at 792*

With regard to the first prong of the test for obtaining a stay, the Chicopee Public Schools neither raise a serious or difficult legal issues in an area where the law is unclear, nor does it

present a case where the facts were so unclear or unsupported by the Decision that the District Court could find differently based on the narrow scope of review. For example, the Chicopee Public Schools have specifically asserted that it's appeal is based on the grounds that the "Bureau's decision is patently inconsistent with evidence at hearing." Parents assert that the School District's interpretation of the BSEA decision in this regard is totally self-serving. This case focused on the School District's proposed IEP, which offered READ 180, a Scholastic Inc. program, as it's sole form of remediation. The hearing officer clearly stated regarding that issue:

> "Chicopee argued that its reading class, using READ 180 program, met Dr. Kemper's recommendations for direct, systematic reading instruction. I disagree. ...The evidence in this hearing established that READ 180 is a new, exciting, engaging computer assisted tool for developing reading fluency in disadvantaged students attending large public school systems. There is no evidence, however, that it is a targeted, rule based, phonetic system designed to remediate individual reading disabilities. Without showing of effectiveness with the language disabled population, the Parents were entitled to maintain a reasonable degree of skepticism about the READ 180 program"

The parents would also assert that Decision and record show that despite the volumes of brochures and hundreds of pages of literature regarding READ 180 that was placed into evidence, along with the testimony of every witness for or against the School District, that no where could anyone find any language that READ 180 is a program designed for Dyslexic or language based learning disabled students. The Decision and record will show that the School District trained one teacher in READ 180 only weeks prior to the beginning of the school year and that teacher had only recently taken up teaching after a twenty-year career at Mass Mutual Insurance Company. Finally, the IEP was not even offering to administer READ 180 according to Scholastic's guidelines. The Hearing Officer stated: "That skepticism grew into a reasonable objection when the proposed IEP failed to provide the full 90 minutes daily of READ 180

instruction recommended by the program developers..." Moreover, despite the School District's assertion that the decision was based entirely on procedural violations, the Decision clearly provides an entire section of substantive reasons why the IEP proposed by the School District was inappropriate.

The School District also asserts that the "Bureau gave Dr. Souweine's opinion "little weight" allegedly because she did not personally evaluate the Student." The School District then cites another case decided by the BSEA as support. First, parents assert that the other case is irrelevant in that it involved completely different set of facts to which Dr. Souweine may have had personal knowledge from which to testify. However, in this case Dr. Souweine had no previous personal or expert knowledge of READ 180. The School District omits that reasoning from the Decision. The hearing officer states in the Decision that in addition to Dr. Souweine not personally evaluating the student that "Dr. Souweine's knowledge of the READ 180 program came solely through the materials presented to her by Chicopee and her observation of Chicopee's use of the program." The record will reflect that Dr. Souweine, from her own testimony, had no prior knowledge of READ 180 before this case.

From a close reading of the decision alone the District Court can determine that the facts support the decision of the hearing officer. The Chicopee Public Schools reasoning is self serving and it's appeal, which rests on choosing to ignore or omit language clearly stated in the Decision, falls short of providing the District Court any vehicle or basis to conclude that it has a strong likelihood for success on appeal.

In view of the clear factual findings on which the Bureau's Decision was made, the Chicopee Public Schools cannot make an adequate showing that there are important legal questions posed, or that the facts support it's claim that the Decision was wrongly decided, and

thus it cannot show that it is likely to succeed on appeal. The Parents assert that the first prong
has not been met.

II.    THE SCHOOL DISTRICT WILL NOT BE IRREPARABLY INJURED
       ABSENT A STAY, HOWEVER, THE STUDENT WILL BE IRREPARABLY
       HARMED IF THE APPEAL IS GRANTED.

        With regard to the second prong of the test for a stay, the Chicopee Public Schools will

not be irreparably harmed absent a stay. Rather, the focus should primarily be on the third prong,

which is whether issuance of the stay will substantially injure the other parties interested in the

proceeding. The parents assert that issuance of a stay would strip the child of the protections

provided by Individuals with Disability Education Act ("IDEA") 20 U.S.C. 1415(j) and cause

irreparable harm.

        The United States Supreme Court in *Burlington* held "that during the pendency of any

judicial appeal of the Bureau decision, unless the State or local educational agency and the

parents otherwise agree, the child should remain in the then-current educational placement."

*School Committee of Burlington, v. Massachusetts Department of Education, 471 U.S. 359, 371*

*(1985) citing 20 U.S.C. 1415(j).* In *Burlington* the Supreme Court concluded that the BSEA

decision operates as an agreement between the parent and the State with respect to placement

while on appeal. The reasoning behind *20 U.S.C. 1415(j)* is clearly to protect the child's

placement for the following years. In *Burlington I,* the First Circuit Court of Appeals, cites the

Congressional record pertaining the intent behind *20 U.S.C. 1415(j)*, which is to eliminate any

delay in providing children appropriate services which in turn would cause irreparable harm.

That First Circuit Court of Appeals states:

        "Current research indicates that full development of reading and other skills will
        more likely occur with learning disabled children, like the child at issue here, if

6

adequate remedial services are provided in the early primary grades. Later intervention generally appears to require special services over a longer period of time to achieve a similar rate of remediation. Some skills must be learned early in the brain's maturation process for them to be learned well, or in some cases, at all. Delay in remedial teaching is therefore likely to be highly injurious to such children. See 121 Cong. Rec. 37412, 37416 (Nov. 19, 1975)." *Burlington, 736 F.2d 773, 792 (1st Cir. 1984).*

The First Circuit Court of Appeals in *Burlington I* goes even further stating:

Congress, through the principal author of the Act, has spoken unequivocally in this regard: "I cannot emphasize enough that delay in resolving matters regarding the educational program of a handicapped child is extremely detrimental to his development. The interruption or lack of the required special education and related services can result in a substantial setback to the child's development." 121 Cong. Rec. 37416 (Nov. 19, 1975) (remarks of Sen. Williams, explaining Conference Committee bill to the Senate). *School Committee of Burlington, v. Massachusetts Department of Education, 736 F.2d 773, 800 (1st Cir. 1984).*

The statutory law and the case law are abundantly clear that where a decision by the BSEA has held that the placement is appropriate that placement is protected until such time that appeal is concluded. The parents assert that the issuance of the stay would directly impact the services Kaitlyn would receive during the 2004-2005 school year. If the parents are not afforded the protection of 1415(j) they will not financially be able to place her at White Oak School for a second year. Unless the School District is willing to place her there voluntarily, which is unlikely, she will lose the placement deemed appropriate by the BSEA. Whereas Kaitlyn would be advancing into the tenth grade her opportunities for acquiring appropriate remediation are becoming slimmer each year. Remediation of a language-based learning disability takes time in that the children must learn the rules that pertain to the English Language and they must internalize these rules so that the process of reading becomes fluent. Kaitlyn has begun this process, however, she is nowhere near done. Stopping this process is more than merely placing

something on hold, children lose what they do not use, and until such time that these strategies are internalized by Kaitlyn, she is at risk of losing them forever.

On the contrary the School District is a large city who has the statutory duty to appropriate necessary funds so that it can provide children like Kaitlyn with their right to a Free Appropriate Public Education. The only argument for irreparable harm the Chicopee Public Schools can assert is fiscal harm, which it is precluded from asserting. *See Burlington, 736 F.2d 773, (1ˢᵗ Cir. 1984)*

There is also the issue of transportation. The parents have been privately driving their child to and from the White Oak School on a daily basis for the entire school year. This means picking their child up in the middle of the afternoon. The practical ramifications for parents who must leave work every day to pick up their child from school is devastating. To date, the Chicopee Public Schools have refused to provide transportation. It is well settled pursuant to M.G.L. c. 30A §14(3) which states: "The commencement of an action shall not operate as a stay of enforcement of the agency decision." *M.G.L. c. 30A §14(3)*. This language pertaining to the immediate force and effect of the BSEA, citing *M.G.L. c. 30A §14(3)* was provided by the BSEA, as an attachment with the Decision, to the Chicopee Public Schools. Once again the Chicopee Public Schools has chosen to conveniently ignore certain language. To make matters worse the Chicopee Public Schools have other student's placed at the White Oak School and accordingly there is already a bus that transports students from Chicopee to the White Oak School. In light of M.G.L. c. 30A §14(3), and Chicopee Public School's refusal to provide Kaitlyn transportation, the parents assert that it is operating in bad faith. This factor alone clearly militates against granting it's request for a stay. The matter of the School District's non-compliance with the Order of the BSEA is currently scheduled for hearing.

The balance of hardships regarding prongs two and three clearly favors Kaitlyn and her parents.

III.    THE IDEA AND CASE LAW ARE CLEAR, WHEN THE BSEA HAS ISSUED A DECISION THE SCHOOL DISTRICT IS REQUIRED TO IMPLENET THAT DECISION WHILE THE APPEAL IS PENDING. THE GRANTING OF THE STAY WOULD CONTRADICT THE PROCEDURAL PROTECTION PROVISIONS PUT IN PLACE BY THE IDEA WHICH SEEK TO MAINTIAN THAT PLACMENT FOR PUBLIC POLICY REASONS.

The Chicopee Public Schools is asking this Court for a stay so that they do not have to reimburse the parents for tuition; pay for previous transportation expenditures incurred by the parents; and also to avoid providing future transportation.  However, most importantly the Chicopee Public Schools seek to put on hold the Decision, which clearly held that the White Oak School is the appropriate placement. As stated above, because the BSEA and Parents are in agreement with the White Oak School placement it becomes the "then current placement" pursuant to 20 U.S.C. § 1415(j) and the Chicopee Public School will be forced to maintain that placement while this matter is on appeal.  The Parents assert that this request for a stay amounts to an attempt to side step the procedural requirements of the IDEA, which were specifically enacted by Congress for public policy reasons.

Public policy considerations regarding the provision of appropriate educational services and programming for disabled children, as well as ensuring that those same children receive those services in a timely manner pending appeal, are a key components of the IDEA. The procedural protections promulgated at 20 U.S.C. § 1415 within the IDEA, were expressly created to protect those public policy goals.  The First Circuit Court of Appeals held conclusively on the issue of whether parents should be permitted to unilaterally place in *Burlington I.*  The First Circuit Court of Appeals held:

"Accordingly, we concluded we do not believe that Congress intended to freeze an arguably inappropriate program for the three to five years of review proceedings. To construe (e)(3) in this manner would thwart the express central goal of the Act: provision of a free appropriate education to disabled children. 1412(1) (emphasis added). Brookline at 918." *School Committee of Burlington, v. Massachusetts Department of Education, 736 F.2d 773, 797 (1ˢᵗ Cir. 1984)*

The United States Supreme Court reviewed Burlington I on appeals and acknowledged the issue by stating:

"Where as in the present case review of a contested IEP takes years to run its course -- years critical to the child's development ... important practical questions arise concerning interim placement of the child and financial responsibility for that placement." *School Committee of Burlington, v. Massachusetts Department of Education, 471 U.S. 359, 359 (1985).*

The United States Supreme Court held that where the BSEA has held that the unilateral placement was appropriate and when parents also feel the placement is appropriate, then it becomes the "then current placement." *Burlington 471 U.S. 359, 372 (1985).* The Supreme Court states:

"The legislative history supports this interpretation, favoring a proper interim placement pending the resolution of disagreements over the IEP: '...we did feel, however, that the placement or change of placement should not be unnecessarily delayed while long and tedious administrative appeals were being exhausted. Thus the conference adopted a flexible approach to try to meet the needs of both the child and the State." 121 Cong. Rec. 37412 (Nov. 19, 1975). (Sen. Stafford)." *Id at 373.*

In this case the effect of granting the stay would be that the child would not be afforded the protection of 20 U.S.C. 1415(j). She would be forced to return next year to a placement already found inappropriate and she would remain in that placement until the appeals process was properly exhausted. This would this be contrary to the explicit legislative history of the

IDEA which is to protect disabled children. As stated by the First Circuit Court of Appeals in *Burlington I* to hold any other way "treats these special needs children as though they were nonperishable commodities able to be warehoused until the termination of in rem." *School Committee of Burlington, 736 F.2d 773, 797 (1st Cir. 1984)*

The Chicopee Public School is also trying to side step retroactively paying the parents for the unilateral placement. The First Circuit Court of Appeals has expressly stated in *Burlington I* that "permitting reimbursement promotes the purpose and policy of the Act." *School Committee of Burlington, 736 F.2d 773, 798 (1st Cir. 1984)*. This was later supported on appeal by the United Stated Supreme Court, which held that:

> "Reimbursement merely requires the Town to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP. Such a post hoc determination of financial responsibility was contemplated in the legislative history."[2] *School Committee of Burlington, 471 U.S. 359, 370 (1985)*.

The language from the First Circuit Court of Appeals decision, which was later upheld by the United State Supreme Court, provides valuable insight into the that court's holding. The First Circuit Court of Appeals states:

> "If the parents are incorrect in their claim that the IEP provides an inappropriate education for their child, they, like any other parents, should bear the financial burden of giving their child a private education. If the school committee's proposed public placement is held inappropriate, then through reimbursement all parties are restored to the position the Act sought to achieve. In turn, 'for the successful parent to be left with what should have been the town's bill ab initio does not seem a municipal protection Congress would have intended, however great the shortage of funds.' Brookline at

---

[2] "If a parent contends that he or she has been forced, at that parent's own expense, to seek private schooling for the child because an appropriate program does not exist within the local educational agency responsible for the child's education and the local educational agency disagrees, that disagreement and the question of who remains financially responsible is a matter to which the due process procedures established under [the predecessor to 1415] [apply]." S. Rep. No. 94-168, p. 32 (1975)

921." *School Committee of Burlington, v. Massachusetts Department of Education, 736 F.2d 773, 798 (1ˢᵗ Cir. 1984).*

In *Burlington I* the First Circuit Court of Appeals also asserted that the Parents' Right to Rely on the State Administrative Decision while the appeal is pending is warranted. In *Burlington I* the parent asserted that where the parents had relied on a final state administrative decision in their favor, a town or local educational agency should be estopped from obtaining retrospective reimbursement from the parents even though it prevails at final judgment. The First Circuit Court of Appeals held:

> "Considering the Act as a whole and the interests it seeks both to protect and to further, we conclude .... Retroactive reimbursement by parents is not 'appropriate' relief within the meaning of 1415(e)(2) where they relied on an implemented a state administrative decision in their favor ordering a particular placement." *School Committee of Burlington, v. Massachusetts Department of Education, 736 F.2d 773, 800 (1ˢᵗ Cir. 1984).*

The First Circuit Court in *Burlington I* concludes:

> "Further, 'no parents shall be required to bear any part of the cost of the instruction and support actually rendered or furnished to their child by a private school in which such child is placed pursuant . . . to an order ... [by the state agency]." Mass. Admin. Code tit.603, 504.5(e). Thus the State's procedures contemplate immediate implementation of the state agency's orders without risk of reimbursement on the part of parents. We think such an arrangement does not contravene the federal Act, and is a question of state-town relations in which the federal courts need not interfere." *Id.*

Parents in the present case have proved before the BSEA that their child was not being afforded her right to a free appropriate public education. As stated by the Court in Burlington:

> "Cooperative federalism also requires the federal courts to accommodate state laws and regulations that place greater duties on towns than those imposed by the federal Act, see supra, Part II. The governing Massachusetts regulations require that "whenever a placement is . . . ordered [by the state agency] . . . such placement shall be made forthwith, without any unnecessary delay." Mass. Admin. Code tit. 603, 409.0." *Id.*

The procedural protections are clear, that during the pendency of the appeal the underlying decision of the BSEA, and the placement that it deems appropriate, must be put into force and effect. The law clearly places great importance on the administrative decision, holding that the administrative decision must be enforced immediately and that the parents must be reimbursed for the unilateral placement even if it is later found that the public school's program was appropriate. Public policy considerations are no more evident than in the creation of the IDEA and it's procedural protections, which ensure that children will receive appropriate educational services during that appeals process. Moreover, ensuring appropriate services directly correlates to children not being warehoused while their case is on appeal. This is the key component behind the origins of the IDEA.

Therefore, the Chicopee Public Schools request to stay the Decision of the BSEA has public policy ramifications that directly conflict with express will of Congress as codified in the IDEA. The parents strongly assert that the granting of the stay would directly violate the public policy goals of the IDEA.

WHEREFORE, Kaitlyn T. and her parents respectfully request that the Chicopee Public School's request to stay the Decision of the BSEA be denied.

Respectfully submitted,
The Plaintiffs,
By their attorney

May 18, 2004

Derek M. Beaulieu, Esq.
1242 Main Street, Suite 306
Springfield, MA 01103
BBO# 644185

## CERTIFICATE OF SERVICE

I, Derek M. Beaulieu, Attorney for Defendants hereby certify that on this eighteenth day of May, 2004, I delivered via regular mail a copy of parent's closing argument to Claire Thompson, Esq., Doherty, Wallace, Pillsbury & Murphy, P.C., One Monarch Place Suite 1900, Springfield, MA 01144-1900

May 18, 2004

Derek M. Beaulieu, Esq.